UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DEANNA K.,[1]

                                 Plaintiff,        Case # 22-CV-219-FPG

v.                                                               DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

## INTRODUCTION

On April 11, 2019, Plaintiff Deanna K. protectively applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). Tr.[2] 128. The Social Security Administration ("SSA") denied her claim and Plaintiff appeared at a hearing before Administrative Law Judge ("ALJ") Vincent M. Cascio on August 3, 2020. *Id.* On August 28, 2020, the ALJ issued an unfavorable decision. *Id.* at 125. The Appeals Council denied review, making the ALJ's decision the final decision of the SSA. Tr. 1-4. Plaintiff then appealed to this Court. ECF No. 1.[3]

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 11. For the reasons that follow, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and the ALJ's decision is AFFIRMED.

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only her first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF No. 4.

[3] The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

**LEGAL STANDARD**

## I. District Court Review

When reviewing a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

## II. Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has any "severe" impairments that significantly restrict her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

**DISCUSSION**

I. **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 2, 2018, the alleged onset date. Tr. 131. At step two, the ALJ found that Plaintiff had the following severe impairments: migraine headache disorder, carotid arterial disease with chronic carotid dissection, degenerative disc disease of the cervical and lumbar spine, obstructive sleep apnea, unspecified anxiety disorder, and bipolar disorder. *Id.* At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. *Id.* at 131-133. The ALJ concluded that because the claimant's mental impairments "do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied." *Id.* at 133. Further, because there was no evidence of marginal adjustment, the ALJ also concluded that the evidence failed to establish the presence of the "paragraph C" criteria. *Id.*

The ALJ then determined that Plaintiff maintained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), with certain limitations. *Id.* at 133-34. Specifically, the ALJ concluded that Plaintiff could occasionally climb ramps and stairs, but could not climb ropes, ladders, or scaffolds. *Id.* at 133. She could also frequently flex and rotate the neck and occasionally balance, stoop, crouch, kneel, and crawl. *Id.* The ALJ also concluded that she must avoid unprotected heights and hazardous machinery and avoid concentrated exposure to bright lights, "defined as an environment requiring the use of special goggles to perform the necessary work duties." *Id.* at 134. Finally, she could perform jobs with no more than moderate noise levels

3

and could understand, remember, and carry out simple, routine, and repetitive work-related tasks. *Id.*

At steps four and five, the ALJ concluded that, although Plaintiff could not perform any past relevant work, there were jobs that existed in significant numbers the national economy that Plaintiff could perform including, for example, routing clerk, photocopy machine operator, and apparel stock checker. Tr. 142-143. Accordingly, the ALJ determined that Plaintiff was not disabled. *Id.* at 143.

**II.   Analysis**

Plaintiff argues that remand is warranted for two reasons. First, she argues that the ALJ erred by failing to evaluate the opinion of Plaintiff's psychologist, Dr. Sally Briggs, that her psychological impairments met or medically equaled a listing by way of the paragraph C criteria. ECF No. 9-1 at 20. Second, she argues that the ALJ's RFC determination was not supported by substantial evidence because the bright-light limitation is inadequate to accommodate Plaintiff's severe headache disorder and because the ALJ failed to account for absences that Plaintiff's headache disorder and psychiatric impairments, and related treatment, would cause. *Id.* at 26-29. As explained below, the Court concludes that neither ground warrants remand.

**A.   Paragraph C**

To satisfy Listing 12.04 (depressive, bipolar, and related disorders), a claimant must establish the criteria of paragraph A and either paragraph B or C. At issue here is the ALJ's treatment of paragraph C.[4] To satisfy paragraph B, Plaintiff must show "[e]xtreme limitation of one or marked limitation of two, of the following areas of mental functioning . . . 1. Understand,

---

[4] Plaintiff does not specifically challenge the ALJ's paragraph B analysis. *See generally* ECF No. 9-1 at 20-26. She has therefore waived any argument that the ALJ erred in his analysis of the paragraph B criteria. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Wieneke v. Comm'r of Soc. Sec.*, No. 18-CV-637, 2019 WL 5784938, at *4 (W.D.N.Y. Nov. 6, 2019).

remember or apply information[;] 2. Interact with others[;] 3. Concentrate, persist, or maintain pace[;] 4. Adapt or manage oneself." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. To satisfy paragraph C, a claimant must show that:

> [Her] mental disorder in this listing category is "serious and persistent;" that is, [she has] a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (*see* 12.00G2b); and
>
> 2. Marginal adjustment, that is, [she has] minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life (*see* 12.00G2c).

*Id.*; *see Colin U. v. Comm'r of Soc. Sec.*, 628 F. Supp. 3d 466, 469 (W.D.N.Y. 2022). The regulations explain that marginal adjustment means that a person's "adaptation to the requirements of daily life is fragile," reflecting a "minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00G.2.c. The SSA will consider a person to have "achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of [a person's] symptoms and signs and to deterioration in [her] functioning." *Id.*

Here, the ALJ addressed, in detail, Plaintiff's abilities to function in the broad areas set out in paragraph B. Tr. 132-33. He then turned to paragraph C, concluding that "the evidence fails to establish the presence of the 'paragraph C' criteria." *Id.* at 133. Specifically, the ALJ found that there was "no evidence of marginal adjustment; that is that the claimant has the minimal capacity to adapt to changes in the environment or to demands not part of her daily life." *Id.*

5

Plaintiff argues that the ALJ's paragraph C analysis is flawed because it did not address Dr. Briggs' opinion that Plaintiff "did have marginal adjustment as contemplated by the C criteria." ECF No. 9-1 at 22 (citing Tr. 1270, 1272).  Although, as Plaintiff recognizes, the ALJ "was not bound by Dr. Briggs' opinion," *id.* at 21, she argues that he "was required to evaluate it" and because his decision is "silent as to Dr. Briggs' opinion regarding paragraphs A and C of the listing," the ALJ committed reversible error, *id.* at 20, 25; *see also* ECF No. 12 at 2-3.  The Court disagrees.

To begin, an ALJ need not "articulate specific evidence supporting his or her finding that [a claimant's] impairment[] does not medically equal a listed impairment." *John H. v. Comm'r of Soc. Sec.*, No. 20-CV-1278, 2022 WL 748237, at *6 (W.D.N.Y. March 11, 2022) (citing SSR 17-2p, 2017 WL 3928306, at *4 (March 27, 2017)) (alterations in original).  Instead, "'a statement that the [claimant's] impairment[] does not medically equal a listed impairment' will generally constitute sufficient articulation for the ALJ's finding." *Id.* (alterations in original).  Moreover, both the ALJ's paragraph B analysis and "articulation of the reasons for her conclusion that the claimant is not disabled in the remaining steps of the sequential evaluation should provide a rationale that is sufficient for a subsequent reviewer or court to determine the basis of the step-three medical equivalence conclusion." *Colin U.*, 628 F. Supp. 3d at 470-71; *see also Jeffrey W. v. Berryhill*, No. 18-CV-0115, 2019 WL 2210593, at *7-8 (N.D.N.Y. May 22, 2019) (finding that the plaintiff did not satisfy the paragraph C criteria with the requisite marginal adjustment where plaintiff's daily activities included managing money, playing poker, using his computer, driving a car, shopping, cooking, fishing, walking the dogs, cleaning his clothes, and vacuuming and medical evidence indicated good concentration, intact memory, normal thought content, and goal-oriented thought processes).

Here, "although the ALJ's explicit evaluation of the paragraph C requirements of Listing 12.04 was conclusory," *John H.*, 2022 WL 748237, at *6, the ALJ's paragraph B analysis, as well as his subsequent analysis in developing Plaintiff's RFC, are sufficient to support the conclusion that Plaintiff did not display marginal adjustment, *see id.*; *Colin U.*, 628 F. Supp. 3d at 470-71. After a thorough analysis of each area of mental functioning described in paragraph B, the ALJ concluded that Plaintiff's mental impairments did not cause either two marked or one extreme limitation. Tr. 132-33. Instead, she had mild limitations in understanding, remembering, or applying information, interacting with others, and adapting or managing herself. *See id.* Her most significant limitation was a moderate limitation in concentrating, persisting, or maintaining pace. *Id.* at 133. Plaintiff reported that she socialized with friends and had good relationships with family members, including her mother, uncle, father, and children. Tr. 133. During a December 2019 neurological examination, she "denied forgetting to take medications or pay her bills, and reported that she was not getting lost while driving." Tr. 132. In describing Plaintiff's ability to adapt or manage herself, the ALJ noted that Plaintiff could, among other things, attend to personal care, grocery shop, manage her money, care for her teenage children, drive independently, and attend appointments. Tr. 133. "Plaintiff's abilities in these areas support the ALJ's conclusion that Plaintiff did not meet the paragraph (C) marginal adjustment standard." *Colin U.*, 628 F. Supp. 3d at 471; *see Jeffrey W.*, 2019 WL 2210593, at *7-8; *Mitchell*, 2018 WL 3300683, at *18.

The ALJ's RFC analysis further supports this conclusion. *John H.*, 2022 WL 748237, at *6. After reviewing the opinions of several examiners, the ALJ concluded that Plaintiff would be "moderately limited in her ability to concentrate, persist, or maintain pace due to the cumulative symptoms of her mental and neurological medical conditions." Tr. 140. The ALJ specifically considered Dr. Briggs' opinion that Plaintiff demonstrated a marked limitation in her ability to

7

concentrate, persist, or maintain pace, but concluded that her opinion was unpersuasive, as it was inconsistent with Plaintiff's mental health treatment records and her own reports of the "broad array of activities of daily living she is able to perform independently." *Id.* at 141.  The ALJ found a state agency psychological consultant's opinion "partially persuasive, insofar as [the consultant] assessed mild limitations in understanding, remembering, or applying information, interaction and adaptation." *Id.* at 139.  It noted that these limitations were consistent with the totality of the record including a "generally unremarkable neuropsychological assessment," a "benign consultative exam," and Plaintiff's "stable mental health treatment records."  *Id.*  This weighing of the competing medical evidence is sufficient to explain and justify the ALJ's determination that Plaintiff did not display marginal adjustment and therefore did not meet the paragraph C criteria. *See John H.*, 2022 WL 748237, at *6; *see also Schildwachter v. Berryhill*, No. 17-CV-7277, 2019 WL 1116256, at *7 (S.D.N.Y. Feb. 8, 2019), *report and recommendation adopted*, 2019 WL 1115026 (S.D.N.Y. Mar. 11, 2019).

The Court is likewise not persuaded that the ALJ's description of Dr. Briggs as a therapist and "Ms. Sally Briggs," rather than a psychologist and "Dr. Sally Briggs," *see* ECF No. 9-1 at 24, warrants remand.  Plaintiff notes that therapists, unlike psychologists, are not "acceptable medical sources."  *See id.* (citing 20 C.F.R.§ 404.1502(a)(2)).  However, under the regulations for claims, like Plaintiff's, filed on or after March 27, 2017, an ALJ considers medical opinions from medical sources, not just "acceptable medical sources." *Compare* 20 C.F.R. § 404.1520c(a) ("When a medical source provides one or more medical opinions . . . we will consider those medical opinions . . . from that medical source . . . .") *with* 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources . . . .").  There is no indication that the ALJ did not consider Dr. Briggs a medical source, as he discussed Dr. Briggs' opinion after noting that he had

"fully considered the *medical opinions* and prior administrative medical findings as follows." Tr. 139 (emphasis added); *see* Tr. 141 (discussing opinion of Dr. Briggs). Moreover, the ALJ did not discount Dr. Briggs' opinion because she lacked "advanced education or training," 20 C.F.R. § 404.1520c(c)(4), but because it was inconsistent with Plaintiff's mental health treatment records and her participation in a "broad array" of daily activities, *see* Tr. 141; *see also* 20 C.F.R. § 404.1520c(b)(2) (noting that supportability and consistency are the most important factors in evaluating persuasiveness of a medical opinion). The ALJ's failure to acknowledge that Dr. Briggs is a Ph.D. psychologist, rather than a therapist, is therefore harmless, as there is no "reasonable likelihood" that doing so would have changed the ALJ's determination. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010).

In sum, the ALJ's articulation of his determination that Plaintiff did not establish the paragraph B criteria and that she was not disabled are sufficient to permit the court to determine the basis of his conclusion that Plaintiff did not demonstrate marginal adjustment and therefore did establish the paragraph C criteria. Accordingly, remand is not warranted.

### B. The RFC

Plaintiff also contends that the ALJ's RFC determination was not supported by substantial evidence. She asserts that the ALJ appears to have based his finding on his own interpretation of the medical evidence because "his very specific findings are not echoed by any treating or examining medical authority." ECF No. 9-1 at 28. As explained below, the Court concludes that, while the RFC does not perfectly align with any medical opinion in the record, the ALJ's RFC determination is nevertheless supported by substantial evidence.

A person's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1); *see also Riederer v. Comm'r of Soc. Sec.*, 464 F. Supp. 3d 499, 503 (W.D.N.Y.

2020) ("'Residual functional capacity' is defined as the most work a claimant can still do despite limitations from an impairment and/or its related symptoms."). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "An RFC finding will be upheld when it is supported by 'substantial evidence' in the record." *Riederer*, 464 F. Supp. 3d at 503 (citation omitted).

The ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 256-57 (W.D.N.Y. 2018) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)). But an ALJ is "not a medical professional," and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Id.* at 257 (quoting *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018)). An ALJ may not, therefore, substitute his own judgment for competent medical opinion, *see Quinto v. Berryhill*, No. 17-CV-24, 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017), and an ALJ's RFC determination "without a medical advisor's assessment is not supported by substantial evidence," *Dennis v. Colvin*, 195 F. Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted). However, "[a]n ALJ's conclusion need not perfectly correspond with any of the opinions of medical sources cited in his decision." *Benman*, 350 F. Supp. 3d at 257 (quoting *Matta*, 508 F. App'x at 56) (internal quotation marks omitted). Moreover, "remand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record, inasmuch as any alleged error in this regard inures to the claimant's benefit." *Baker v. Berryhill*, No. 15-CV-943, 2018 WL 1173782, at *4 (W.D.N.Y. March 6, 2018).

Plaintiff argues that there is no support in the record that the ALJ's bright-light limitation would accommodate her severe headache disorder. ECF No. 9-1 at 28. The ALJ concluded that Plaintiff "must avoid concentrated exposure to bright lights, defined as an environment requiring the use of special goggles to perform the necessary work duties." Tr. 134. Plaintiff contends that the record does not support a conclusion that Plaintiff "need only stay away from lights so bright one would typically need eye protection to work around them." ECF No. 9-1 at 28. She also argues that the ALJ improperly failed to account for any absences from work caused by her headache disorder and psychiatric impairments, which the ALJ concluded were "severe." *Id.* at 28-29. The Court disagrees with both contentions and concludes that substantial evidence supports the ALJ's RFC determination.

    i.    **Bright-Light Limitation**

The ALJ described Plaintiff's RFC as requiring her to avoid concentrated exposure to bright lights, "defined as an environment requiring the use of special goggles to perform the necessary work duties." Tr. 134. In developing this RFC, the ALJ considered Plaintiff's history of migraines, including the frequency and intensity of her migraines, her response to treatment, and medical opinions regarding migraine-related limitations. *See* Tr. 135-42. Plaintiff was hospitalized for a suspected complex migraine headache in April 2017. Tr. 135. She underwent a brain MRI, which was unremarkable. *Id.* She initiated treatment for her migraine headaches at DENT Neurologic Institute ("DENT") following her hospitalization. *Id.* In 2018, Plaintiff received occipital nerve blocks to manage her migraine symptoms, which "she reported [were] generally effective in providing relief from her symptoms." Tr. 136 (citing Tr. 1032-42). Plaintiff visited the emergency department in 2019 and reported some photophobia, trouble speaking, and numbness in the face and extremities. Tr. 649, 651; 658-661.

Plaintiff later presented for follow-up examinations at DENT. *See* Tr. 1004-23. In May 2019, she reported that her migraines had worsened after tapering off from occipital nerve blocks. Tr. 1016. At that time, she reported approximately six migraines per month and "some kind of headache every day." *Id.* Thereafter, Plaintiff resumed receiving occipital nerve blocks to manage her migraines. Tr. 137 (citing Tr. 1008-17). From December 2019 to February 2020, Plaintiff received multiple nerve block injections for her migraine headaches, which provided relief for about three or four weeks at a time. Tr. 138 (citing Tr. 1323-31); Tr. 1336.

Along with Plaintiff's treatment records, the ALJ also considered the opinion of Dr. Swetz, Plaintiff's primary care physician. Tr. 141. Dr. Swetz opined that Plaintiff could use a computer for no more than one hour per day because her "migraines and anxiety are induced by uninterrupted time on the computer." Tr. 1311. He did not include any other restriction related to light sensitivity. *See generally id.* The ALJ considered Dr. Swetz's opinion regarding computer use to be "generally unpersuasive" and found it to be inconsistent with Dr. Swetz's own "generally unremarkable treatment records." Tr. 141. Those treatment records reveal discussions regarding, for example, safety and compliance issues associated with pain medication *See e.g.*, Tr. 728, 734. Throughout 2017, treatment records describe Plaintiff's headaches as improving. *See e.g.*, Tr. 689, 697, and throughout the winter and spring of 2018, the records describe Plaintiff's migraines as "stable," Tr. 719. In September 2018, Plaintiff complained of continuing headaches and "vision issues" with monitor use. Tr. 726. Notably, the September 2018 record does not note that Plaintiff complained of light sensitivity. *See* Tr. 726-28.

Treatment records from DENT are consistent with the vision issues described in Dr. Swetz's treatment records. *See* Tr. 1043. They note, for example, that "[Plaintiff] will get some blurred vision when she looks down from her phone and then looks to the TV quickly." *Id.* DENT

records also note that, after she "tapered off on occipital nerve blocks," Plaintiff reported that her headaches would worsen throughout the day "depending on anxiety and how much she has to do for her children and family that day." Tr. 1016.

Consultative examiner Nikita Dave, M.D. noted that Plaintiff complained that she experienced "some photophobia, sonophobia, and occasional nausea" related to her headaches and that she "lies down in a dark, quiet room and takes Tylenol." Tr. 1117. But, while Dr. Dave opined that Plaintiff "may have moderate limitations for all strenuous, sustained physical activity during bouts of severe headaches," his opinion included no limitation for computer use or any other potentially light-related limitation. *See id.* The ALJ found this opinion to be "generally persuasive, as it is consistent with Dr. Dave's clinical findings and supported by [Plaintiff's] overall stable treatment records." Tr. 140. After considering these opinions, the ALJ, rejected Dr. Swetz's computer-use limitation, but ultimately included a bright-light limitation based on the "medical evidence, subjective allegations, and opinions of record." Tr. 141-42.

Plaintiff appears to assert that Dr. Swetz's computer-use limitation demanded a more restrictive bright-light limitation. *See* ECF No. 9-1 at 28. To the contrary, nowhere in his opinion does Dr. Swetz purport to limit Plaintiff's exposure to light. *See* Tr. 1311. Instead, he simply noted that "uninterrupted time on the computer," induces Plaintiff's migraines and anxiety without explaining what about time on the computer does so. *Compare id.* (opinion stating that Plaintiff should use a computer for less than one hour per day because her migraines are induced by uninterrupted time on the computer) *with Arielle B. v. Comm'r of Soc. Sec.*, 2022 WL 11261817, at *3 (W.D.N.Y. Oct. 19, 2022) (discussing opinion stating that plaintiff should avoid bright lights and sound because they exacerbate her headaches). But even if the Court were to interpret Dr. Swetz's computer-use limitation as a restrictive bright-light limitation, "the ALJ properly found

13

that [Dr. Swetz's opinion was] not supported by, or consistent with, the medical evidence of record as outlined above." *Nerisnger v. Comm'r of Soc. Sec.*, 2020 WL 1151459, at *4 (W.D.N.Y. Mar. 10, 2020). As explained above, neither Dr. Dave nor Plaintiff's treating neurologists indicated that the Plaintiff required a darker environment to accommodate her migraines. *See* Tr. 726-28, 1016, 1043.

Moreover, because "the record contains sufficient evidence from which [the ALJ could] assess [Plaintiff's] residual functional capacity, a medical source statement or formal medical source opinion [was] not necessarily required" to support the bright-light limitation that the ALJ included in the RFC. *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (summary order). Here, rather than "attempt[ing] to forge his own medical opinion based on raw data or reject[ing] diagnoses provided by medical professionals," the ALJ "accurately summarized medical notes and opinions," *Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (summary order), regarding Plaintiff's migraine headaches, including that nerve blocks were generally effective in reducing the frequency and intensity of her migraines, *see* Tr. 137-139. Although no medical opinion specifically included a bright-light limitation, the ALJ nevertheless acknowledged Plaintiff's complaints of light sensitivity and included such a limitation in the RFC. *See Ramsey*, 830 F. App'x at 39 (upholding RFC where ALJ deviated from consultative examiners' recommendations by formulating a more restrictive RFC); *Baker*, 2018 WL 1173782, at *4 (noting that remand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in medical opinions of record).

Plaintiff has not presented medical evidence that she requires a more restrictive bright-light limitation, and has therefore failed to meet her burden to demonstrate that she had a more

restrictive RFC than found by the ALJ. *See Thomas S.*, 2021 WL 1293105, at *8 (citing *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order)).

### ii.    Absences

Plaintiff also asserts that remand is warranted because, "despite finding Plaintiff's headache disorder and her psychiatric impairments severe, the ALJ failed to account for any absences from work" that they might cause.[5] ECF No. 9-1 at 28. Specifically, Plaintiff points to two medical sources, Dr. Briggs and Psychiatric Nurse Practitioner Melissa Merlin, who both opined that Plaintiff would be absent from work more than four days per month. Tr. 1258, 1273. Although the ALJ did not explicitly refer to the portions of the opinions stating that Plaintiff would miss more than four days of work per month, the ALJ did specifically consider both sources' findings that Plaintiff could not maintain attendance and punctuality. *See* Tr. 141. The ALJ noted that he found both opinions unpersuasive as they were inconsistent with and unsupported by the "broad array of daily activities she is able to perform independently," including her ability to attend appointments regularly. *Id.* In doing so, he adequately explained his decision to discount both Dr. Briggs' and PNP Merlin's opinions regarding Plaintiff's ability to maintain consistent attendance at work. *See Mathews v. Comm'r of Soc. Sec.*, No. 19-CV-73, 2020 WL 4352620, at *6 (W.D.N.Y. July 29, 2020) (regular attendance at appointments appropriate basis for rejecting opinion that plaintiff was unable to meet competitive standards in maintaining regular attendance at work); *Rebecca C. v. Saul*, No. 19-CV-1600, 2021 WL 9569350, at *2 (W.D.N.Y. Jan. 7, 2021) (plaintiff's weekly schedule of classes and other activities including regular attendance at medical appointments appropriate basis to discount opinion that plaintiff would miss more than four days

---

[5] The Court notes that a finding that a person's impairments are severe at step two is not necessarily inconsistent with a finding of non-disability, as "the standard for a finding of severity [at step two] is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).

of work per month); *cf. Ryan H. v. Comm'r of Soc. Sec.*, No 20-CV-6035, 2021 WL 4059327, at *6 (W.D.N.Y. Sept. 7, 2021) (conclusory statement that treating physician's opined absenteeism rate were not supported by the evidence failed to provide a basis for rejecting that portion of treating physician's opinion).

The ALJ also noted that consultative examiner Michael Santa Maria, Ph.D. concluded that Plaintiff demonstrated "more than adequate cognitive capacity to handle work duties of a manager and/or analyst" and "appears to evidence adequate stability of mood for full time competitive employment at [the time of the examination], despite continuing to endorse some degree of mood disturbance." Tr. 1183.  The ALJ concluded that, unlike the opinions of Dr. Briggs and PNP Merlin, Dr. Santa Maria's opinion was "supported by claimant's stable mental health treatment records, which show improved mood and no significant cognitive defects." *Id.* at 141.

Moreover, even if the opinions of Dr. Briggs and PNP Merlin support Plaintiff's position that she is disabled, "the Court's task here is to decide whether substantial evidence supports the ALJ's decision, not [her] contrary position." *Simmons v. Comm'r of Soc. Sec.*, No. 18-CV-1462, 2020 WL 4597316, at *4 (W.D.N.Y. Aug. 10, 2020).  "It was up to the ALJ to resolve and weigh conflicting evidence." *Id.*  And, although, Plaintiff "has identified evidence that conflicts with the ALJ's RFC determination," she "has failed to show that the ALJ's determination was not supported by substantial evidence." *Id.* (citing *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012)).

In sum, Plaintiff has failed to demonstrate that the RFC as determined by the ALJ was not supported by substantial evidence, and remand is therefore not warranted.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings, ECF No. 9, is DENIED and the Commissioner's Motion for Judgment on the Pleadings, ECF No. 11, is GRANTED. The decision of the Commissioner is AFFIRMED. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: August 24, 2023
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York